Carrie LeRoy (SBN #209706)
17774 Old Summit Rd.
Los Gatos, CA 95033
Telephone: (650) 630-4379
Email: carrie.leroy@aol.com

Pro Bono Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ELVIS ANTONIO VERA CORDOVA,

Petitioner,

v.

MARKWAYNE MULLIN, Secretary of the United States Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; DAVID VENTURELLA, Acting Director of United States Immigration and Customs Enforcement; FERETI SEMAIA; Warden, Adelanto ICE Processing Center; THOMAS GILES, Acting Field Office Director of the Los Angeles Immigration and Customs Enforcement Office in their official capacities

Respondents.

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

**VERIFIED PETITION**

**PETITIONER'S DHS NO:**

**A 241-686-713**

"The freedom to live fearlessly, the opportunity of liberty, and the American dream. That is all Plaintiffs seek. Instead, they are told to atone for their race, leave because of their names, and purify their blood. The Court disagrees."
– The Honorable Trina L. Thompson

"[I]f the APA's mandate of genuine, non-arbitrary decision-making means anything, it surely means that an agency cannot openly express stereotype-based animus toward a group of immigrants from certain countries and a predetermined intent to sweep away their protections, and then expect a court to blindly accept a post hoc rationalization that its decision was actually the product of a technical administrative concern. We as the judiciary should not pretend to be blind to what the American public can easily observe for themselves."
– The Honorable Salvador Mendoza, Jr.

## INTRODUCTION

1. In violation of the U.S. Constitution, the Immigration and Nationality Act ("INA") and its implementing regulations and the Administrative Procedure Act ("APA"), Elvis Antonio Vera Cordova ("Petitioner") is being unlawfully detained by Respondents at the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center ("Adelanto"). Petitioner respectfully seeks a writ of habeas corpus requiring Respondents to release him immediately from detention, and prohibiting his re-arrest without notice of the basis of the impending revocation of his parole and a pre-deprivation hearing to contest such arrest before a neutral decision-maker. In addition, to preserve this Court's jurisdiction, Petitioner requests that this Court order the Respondents not to transfer him

outside of the District or deport him for the duration of these habeas proceedings.

2. Petitioner is just one more casualty of the current administration's war on the constitutional rights of noncitizens in the furtherance of mass deportation goals. As an asylum seeker previously detained and paroled subject to alternatives to detention in 2022, with no changed circumstances to justify his re-detention, with no warrant, and with no cause of any kind to justify his re-arrest on July 27, 2026, Petitioner's current detention is unlawful. Exh. A; Declaration of Carrie LeRoy ("LeRoy Decl.") ¶¶ 5, 9 -12. He was afforded no due process protections whatsoever prior to his arbitrary re-arrest and re-detention. LeRoy Decl. ¶ 12.

3. All individuals within the United States have constitutional rights. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Petitioner, who has deep ties to his community in the United States and who was arbitrarily re-arrested by ICE agents at a scheduled check-in, is not a flight risk. Exh. C; LeRoy Decl. ¶¶ 9, 11, 14. To the contrary, for nearly four years, Petitioner complied with the conditions of his release, including appearing in immigration court in response to

the Notice to Appear issued to him and complying with all immigration law obligations. Exh. B; LeRoy Decl. ¶¶ 6, 7, 9-11.

4. Petitioner is actively pursuing his statutory remedies. LeRoy Decl. ¶¶ 6, 11. Accordingly, Petitioner is not subject to a final removal order and, absent a material change in his circumstances, should be able to pursue his asylum claim out of custody. *Id.*

5. Petitioner's summary, unlawful re-arrest and indefinite re-detention flout the Constitution. The only legitimate interests that civil immigration detention serves are mitigating flight risk and preventing danger to the community. When those interests are absent, the Fifth Amendment's Due Process Clause squarely prohibits detention. Additionally, by summarily arresting and detaining Petitioner without a pre-deprivation bond hearing or making any affirmative showing of material changed circumstances, or providing any notice or individualized reasons for his parole revocation required by the implementing regulations of 8 U.S.C. § 1226, Respondents violated Petitioner's procedural due process and statutory rights.

6. At the very least, prior to his re-detention, Petitioner was constitutionally entitled to (1) a hearing before a neutral decision-maker prior to July 27, 2026, at which the government should have justified his re-detention or been ordered to release him, and (2) individualized written notice prior to his parole revocation.

Instead, Petitioner has been arbitrarily detained at Adelanto since July 27, 2026, without reasonable suspicion, changed circumstances, a warrant or any due process protections whatsoever. LeRoy Decl. ¶¶ 9-12.

7. As a result of his unlawful re-arrest and re-detention, Petitioner is suffering irreparable and ongoing harm. LeRoy Decl. ¶ 13.

8. If Respondents may simply re-arrest a noncitizen without notice or cause, Respondents would be incentivized to trample on the due process, Fourth Amendment and statutory rights of all paroled non-citizens in order to meet their deportation quotas. Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be immediately released from his unlawful detention.

## **JURISDICTION AND VENUE**

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act), 28 U.S.C. § 2241 (habeas corpus), Article I, § 9, cl. 2 of the U.S. Constitution (the Suspension Clause), the Fourth and Fifth Amendments to the U.S. Constitution, and 5 U.S.C. §§ 701-706 (Administrative Procedure Act). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

10. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(a) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is physically detained within this district. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 78,U.S. 484, 493-500 (1973). Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

## <u>REQUIREMENTS OF 28 U.S.C. § 2243</u>

11. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains and receives prompt action from him within the four corners of the application." *Yong v. INS*, 20 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

**PARTIES**

12. Petitioner is a law-abiding refugee from Peru who is seeking asylum in the United States after crossing the border in September 2022 and being paroled into the United States to pursue his asylum claim without an obligation to post bond.

13. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security ("DHS"). He is responsible for the implementation and enforcement of the INA and oversees both Customs and Border Patrol ("CBP"), which was responsible for Petitioner's first detention and release at the border, and ICE, which is responsible for Petitioner's current detention. Mr. Mullin has ultimate custodial authority over Petitioner. He is sued in his official capacity.

14. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, including the Executive Office for Immigration Review ("EOIR") which operates the immigration court system and the BIA. He is sued in his official capacity.

15. Respondent David Venturella is the Acting Director of ICE, a federal law enforcement agency within the Department of Homeland Security. ICE's responsibilities include operating the immigration detention system. In his capacity as ICE Acting Director, Respondent Venturella exercises control over and is a custodian of persons held at ICE facilities nationally. He is Petitioner's

immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

16. Respondent Thomas Giles is the Acting Director of the Los Angeles ICE Field Office. ICE agents under Respondent Giles's authority unlawfully arrested Petitioner and sent him without justification to Adelanto. He is sued in his official capacity.

17. Respondent Fereti Semaia is the Warden of Adelanto, where Petitioner is unlawfully detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

## EXHAUSTION

18. Petitioner asserts that exhaustion should be waived because administrative remedies are futile and his continued detention results in irreparable harm. There is no requirement to exhaust administrative remedies because no other forum exists in which Petitioner can raise the claims herein. There is no statutory exhaustion requirement prior to challenging the constitutionality of an arrest or detention or challenging a policy under the Administrative Procedure Act ("APA"). Only an order of this Court could effectively grant Petitioner relief.

19. Prudential exhaustion is not required here because it would be futile, and Petitioner will "suffer irreparable harm if unable to secure immediate judicial

consideration of [their] claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted); *Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025).

20. Thus, Petitioner has demonstrated grounds for waiving exhaustion. He has been denied his due process rights and has suffered and continues to suffer irreparable harm in the form of the complete loss of his liberty and separation from his community. LeRoy Decl. ¶ 13, 14. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Under *Laing v. Ashcroft,* a finding of "irreparable injury" alone is sufficient to conclude that waiver of prudential exhaustion is warranted. *Laing,* 370 F.3d at 1000; *see also Andriasyan v. Warden,* No. 5:26-cv-01361-JAK (Ex), 2026 U.S. Dist. LEXIS 124748, at *16-17 (C.D. Cal. June 1, 2026) (waiving exhaustion under *Laing* to prevent "irreparable injury"); *Chavez v. Noem*, 801 F. Supp. 3d 1133, 2025 WL 2730228, at *4 (S.D. Cal. 2025) ("The Court therefore finds the prudential exhaustion requirements waived for futility. Because

Petitioners need to show only one of the *Laing* factors applies, ... the Court need not address the other factors."); *Patrick K.K. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-01467-KES-EGC (HC), 2026 U.S. Dist. LEXIS 153055, at *4 (E.D. Cal. July 10, 2026) (waiving exhaustion and explaining that "even if exhaustion were required, waiver would be appropriate to avoid further irreparable harm to Petitioner and further delay in vindicating rights under the INA."). Similarly, exhaustion is appropriate to prevent ongoing irreparable harm to Petitioner and to vindicate his rights under the INA, APA, Fourth Amendment and Due Process Clause.

21. Furthermore, any requirement of exhaustion in immigration court is not appropriate in Petitioner's case because a post-deprivation bond hearing is not the appropriate remedy for the egregious violation of his due process rights. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency"). There is no "extraordinary situation" or valid "governmental interest" to justify Respondents' arbitrary re-arrest and re-detention of Petitioner without individualized notice, cause or a material change

of circumstances in violation of his due process rights. In ordering the release of the petitioner in *Hasratyan v. Bondi*, 2026 WL 288909, Case No. 5:26-cv-00210-MCS-ADS (C.D. Cal. Feb. 2, 2026), this Court explained:

> [T]he process Petitioner received at his January 2026 bond hearing before the immigration judge was deficient. Any remedy to that deficiency by way of review by the Board of Immigration Appeals is doubtlessly months away. Accordingly, the post-detention process Petitioner received and will receive is no substitute for the predetention process she was owed. *Id*. at *4.

22. Petitioner is not eligible or required to seek release on bond in immigration court under *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), *reconsideration granted in part*, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), *amended and superseded on reconsideration*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *final judgment entered*, 813 F. Supp. 3d 1084 (C.D. Cal. Dec. 18, 2025) ("*Bautista*"). Petitioner is not a member of the bond-eligible *Bautista* class, which consists of "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) *were not or will not be apprehended upon arrival*; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista*, 2025 WL 3288403, at *9 (emphasis added). Unlike the bond-eligible class members in *Bautista* who

entered the United States without apprehension, Petitioner was previously detained and CBP subsequently paroled without finding him to be either a flight risk or a danger to the community. Exh. A; LeRoy Decl. ¶ 5. *Bautista*, 2025 WL 3713982, at *24-25 (assessing class certification requirements and noting that at the time of their arrest, petitioners were already in the United States, charged as inadmissible, detained, and denied a bond hearing); *see also Xie v. LaRose*, No. 25-03649, 2026 WL 92066, at *2 (S.D. Cal. Jan. 13, 2026) (finding that petitioner was not a *Bautista* class member under similar factual circumstances); *Singh v. Bowen*, No. 5:26-cv-00867-MEMF-MBK, 2026 U.S. Dist. LEXIS 45553, at *8-9 (C.D. Cal. Mar. 3, 2026) (declining to apply *Bautista* to a previously paroled asylum seeker subject to § 1226(a) and ordering his immediate release).

23. Accordingly, there is no exhaustion requirement, and Petitioner properly seeks immediate release to remedy the due process, Fourth Amendment and statutory violations that resulted in his unlawful re-arrest and re-detention on July 27, 2026.

## FACTUAL BACKGROUND

### A. The 2025 DHS Immigration Enforcement Campaign

24. On January 20, 2025, the day that President Trump took office for his second term, he signed Executive Order 14159, "Protecting the American People

Against Invasion," the purpose of which was "to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people." Exec. Order No. 14,159, 90 Fed. Reg. 8443 (Jan. 20, 2025). The order directed the Secretary of Homeland Security to take various actions "to ensure the efficient and expedited removal of aliens from the United States." *Id*.

25. Since mid-May 2025, DHS has initiated an aggressive enforcement campaign targeting noncitizens who are in regular removal proceedings in immigration court, many of whom, like Petitioner, have pending applications for asylum or other relief. This coordinated operation is aimed at dramatically accelerating deportations by making warrantless arrests of noncitizens attending their ICE check-in appointments and immigration court hearing dates.

26. DHS's aggressive tactics appear to be motivated by the current Administration's imposition of a new daily quota of 3,000 ICE arrests. In part as a result of this campaign, ICE's arrests of noncitizens with no criminal record have increased dramatically since before January 2025.

27. The government's aggressive deportation campaign is also a significant shift from previous DHS practice of re-detaining noncitizens only *after* a material change in circumstances. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th

Cir. 2018) (describing prior practice); *see also Duong v. Kaiser,* 2025 U.S. Dist. LEXIS 185024, at *22 (N.D. Cal., Sept. 19, 2025) (requiring "material change of circumstances" before bond can be revoked or modified (citations omitted)). Petitioner's detention is a result of DHS's unlawful enforcement campaign.

**B. Petitioner's Background**

28. Petitioner, a Peruvian citizen who has the full support of his community, is lawfully seeking asylum in the United States because he is fleeing gang-related violence and persecution and has no recourse through local or national Peruvian officials. LeRoy Decl. ¶ 4, 6

29. On or about September 25, 2022, Petitioner crossed the U.S. border and promptly turned himself in to U.S. Border Patrol officials at the Calexico Port of Entry in California where he was detained and then paroled subject to alternatives to detention . Exh. A; LeRoy Decl. ¶ 5.

30. After it was determined that he posed neither a flight risk nor danger to the community, on or around September 25, 2022, U.S. border patrol officials paroled Mr. Vera Cordova into the United States. CBP granted Petitioner parole by an order dated September 25, 2022. Exh. A; LeRoy Decl. ¶ 5. Mr. Vera Cordova was not required to wear an ankle monitor or other tracking device on his person or to post bond as a condition of his parole. The only condition of release was Petitioner's agreement to appear as directed for hearings and

interviews which he has done. LeRoy Decl. ¶ 11 Mr. Vera Cordova was released subject to Alternatives to Detention and was not told that his release was necessitated by humanitarian concerns or the public benefit, placing Mr. Vera Cordova under 8 U.S.C. § 1226(a).

31. For nearly four years, Petitioner complied with the conditions of his release, including appearing in immigration court in response to the Notice to Appear issued to him and complying with all immigration law obligations. Exh. B; LeRoy Decl. ¶¶ 10-12.

32. After his release, Petitioner began building a life for himself in California. Exh. C; LeRoy Decl. ¶¶ 6, 14. Petitioner has never been arrested or charged with a crime. LeRoy Decl. ¶ 10. Respondents have not alleged in any notices to Petitioner that he has a criminal record, is a national security risk, or poses a flight risk or threat to the community. *Id*. The record, including letters of support for Petitioner, demonstrates that he is a well-regarded, law-abiding person who has integrated into his community and has strong community ties in the United States. Exh. C; LeRoy Decl. ¶ 14. The record in Petitioner's case demonstrates that he complied with the conditions of his release. LeRoy Decl. ¶¶ 7, 9-11.

**B. Petitioner's Unlawful Re-Arrest**

33. On July 27, 2026, Petitioner Mr. Vera Cordova appeared for his scheduled ICE check- in at the Los Angeles ICE office, complying fully with his reporting

obligation. Upon arrival, ICE apprehended and detained him without a warrant, notice or cause. LeRoy Decl. ¶ 7.

34. Prior to his sudden unlawful re-arrest and re-detention, Petitioner had been residing in California with the express knowledge and consent of the government, enjoying an invaluable liberty interest for almost four years. Exhs. A, C; LeRoy Decl. ¶¶ 6, 11. He was a valued member of his community until he was re-arrested and re-detained by ICE on July 27, 2026, without notice, cause, or an opportunity to contest the basis for his re-detention. LeRoy Decl. ¶¶ 7, 12. He was shocked, not only by his re-detention, but also by the lack of notice and basis for the revocation of his parole. LeRoy Decl. ¶ 9.

35. Petitioner's re-arrest and re-detention had nothing to do with his individual case, as he is not a flight risk, has no criminal record and is not a threat to others. Exhs. A; LeRoy Decl. ¶¶ 5, 9-11. Instead, his re-arrest and re-detention are part of a nationwide DHS strategy of making warrantless arrests of brown-skinned noncitizens such as Petitioner who diligently and in good faith attend their check-in appointments with ICE, detaining them, and seeking to re-route them to fast-track deportations.

## **LEGAL BACKGROUND**

A. **Due Process Violations**

36. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hisnandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas*, 533 U.S. at 693). These due process rights are both substantive and procedural.

37. *First*, "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

38. These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Substantive due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v.*

*Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore v. Kim*, 538 U.S. 510, 519–20, 527–28, 531 (2003).

39. *Second*, the procedural component of the Due Process Clause prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis added). This applies even to cases in which that freedom is lawfully revocable. *See Hurd v. District of Peru*, 864 F.3d 671, 864 F.3d at 683 (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context).

40. After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey*, 408 U.S. at 482. As the Supreme Court recognized, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to

live up to the parole conditions." *Id.* "By whatever name, the liberty is valuable and must be seen within the protection of the [Constitution]." *Id.*

41. This reasoning applies with equal if not greater force to people released from civil immigration detention with no criminal record, like Petitioner. Noncitizens living in the United States like Petitioner have a protected liberty interest in their ongoing freedom from confinement. *See Zadvydas*, 533 U.S. at 690. Moreover, "[g]iven the civil context [of immigration detention], [the] liberty interest [of noncitizens released from custody] is arguably greater than the interest of parolees." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

42. Due process required that Respondents provide Petitioner with notice and a pre-deprivation bond hearing *prior* to revocation of his parole. See, e.g., *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796, at *17 (W.D.N.Y. 2025) ("To mitigate the risk of erroneous deprivation due process requires, at a minimum, the opportunity for Mata Velasquez to submit evidence relevant to whether the government should revoke his parole before it makes a revocation decision"); *Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing") (internal quotation marks omitted); *Y-Z-H-L v. Bostock,* 2025 WL 1898025, at *10-12 (D. Or. July 9, 2025)

(explaining the parole process in immigration cases and noting that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision); *see also Guillermo M. R.*, 791 F. Supp. 3d at 1036 ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process.").

***i. Mathews***

43. Once a court has found that a noncitizen has a liberty interest in continued release, the Court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors the Supreme Court described in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hisnandez*, 872 F.3d at 993 (applying *Mathews* factors in immigration detention context). Under that test, the court weighs: (1) the private interest affected; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interest. *Id.*

44. With respect to the first *Mathews* factor, Petitioner has a strong private interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or othis forms of

physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.”). Here, Petitioner entered the United States and was paroled subject to alternatives to detention in 2022 and, for almost four years established strong community ties, building a future for himself in California. Exh. C; LeRoy Decl. ¶¶ 5, 11, 14.

45. Respondents’ acquiescence in Petitioner’s continued freedom from custody upon his initial release from custody in 2022 reinforced his liberty interest and his understandable reliance on Respondents’ actions as making it clear that he would remain out of physical custody absent changed circumstances. *See Anderson v. Chestnut*, No. 1:26-CV-01960-DAD-CKD, 2026 U.S. Dist. LEXIS 62410, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (explaining that “the government’s knowing decision not to detain an individual creates a liberty interest in their continued release” and “[e]ven though petitioner’s parole authorization expired, petitioner maintains his liberty interest in continued release”); *Rocha Ramirez v. Warden*, No. 1:26-CV-02544-DAD-AC, 2026 U.S. Dist. LEXIS 88201, 2026 WL 1078250, at *1 (E.D. Cal. Apr. 21, 2026) (applying *Anderson* to petitioner who entered the United States in 2006 on a valid visa that expired in 2011); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP, 820 F. Supp. 3d 1106, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (“[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his liberty interest

does not expire along with his parole.") (collecting cases); *Amro Yousry Abdeltawab v. Armant*, No. EDCV 26-01520, 2026 U.S. Dist. LEXIS 87515, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (finding a liberty interest for petitioners who "have never been in immigration custody in the first place due to years of deliberate acquiescence by [the government]"). Petitioner has clearly established a liberty interest in 2022 parole. Thus, the first *Mathew*s factor weighs in Petitioner's favor.

46. The second *Mathews* factor, the risk of erroneous deprivation, also weighs in Petitioner's favor. The risk of erroneous deprivation is high when a petitioner does not receive a pre-detention hearing to determine whether there is a valid basis for detention. See *Anderson*, 2026 WL 809990, at *2. Petitioner "was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination." *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025); *see* 8 C.F.R. § 212.5(e)(2)(i) (requiring written notice of termination of parole); *see also* 8 C.F.R. § 287.8(c)(2)(ii) (requiring a warrant for arrest unless the person is likely to escape prior to arrest); 8 C.F.R. § 287.3 (requiring examination of the arrestee and notification of the reason for his or his arrest when a person is arrested without a warrant). Here, when re-arresting Petitioner on July 27 2026, ICE detained Petitioner without any explanation or opportunity to be heard.

47. ICE agents arbitrarily arrested and detained Petitioner without ***any*** pre-detention process in violation of the INA and its implementing regulations. LeRoy Decl. ¶ 7. When the government fails to follow its own regulations, fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing, the risk of erroneous deprivation is high. *See Anderson*, 2026 WL 809990, at *2 (noting the high risk of erroneous deprivation when the petitioner did not receive a pre-detention bond hearing); *H.J.G.G. v. Wofford*, No. 1:25-CV-01718-JLT-EPG, 2025 U.S. Dist. LEXIS 267757, 2025 WL 3761803, at *7 (E.D. Cal. Dec. 30, 2025), *report and recommendation adopted*, No. 1:25-cv-01718-JLT-EPG, 2026 WL 320331 (E.D. Cal. Feb. 6, 2026) (noting the importance of a hearing before a person is deprived of their liberty interest). The second *Mathews* factor, the risk of erroneous deprivation, clearly weighs in Petitioner's favor.

48. Finally, while the government has an interest in enforcing its immigration laws, its interest in detaining Petitioner without a pre-deprivation hearing is low. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 U.S. Dist. LEXIS 133521, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). As "many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Hasratyan*, 2026 WL 288909, at *4.

49. The government released Petitioner from immigration custody in 2022 without an obligation that he post bond, wear an ankle monitor, or satisfy any other condition other than appearing when notified. Exh. A. LeRoy Decl. ¶ 5. Noncitizens like Petitioner are entitled to notice and an opportunity to contest their re-detention *prior* to any re-detention. *See Zinermon*, 494 U.S. at 127. These rights to notice and an opportunity to contest apply even to cases in which that freedom is lawfully revocable. *See Hurd*, 864 F.3d at 683 (D.C. Cir. 2017) (citing *Young*, 520 U.S. at 152 (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing)).

**B. Statutory Violations**

50. Petitioner's removal proceedings are governed by INA section 240, which provides important statutory protections, including hearings before an IJ. *See* 8 U.S.C. § 1229a(a)(1), (a)(4). The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention. *See* 8 U.S.C. § 1226(c).

Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(1) and for those recent arrivals seeking admission referred to under section 1225(2).

51. This case concerns the application of section 1226(a) detention provisions. Congress enacted section 1226(a) as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302-03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. Just last year, Congress amended section 1226(a) as part of the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).

52. Any suggestion that Petitioner is subject to mandatory detention based on the record in his case is incorrect as a matter of law. *See Rodriguez Vazquez v. Bostock*, No. 25-6842,--- F.4th ----, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026) (finding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"); *See also Anderson O.H.G. v. Johnson*, No. 1:26-cv-03248-MWJS, 2026 WL 1330831 (E.D. Cal. May 12, 2026); *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).

53. Respondents violated Petitioner's rights under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), prohibiting warrantless arrests without reason to believe an individual is a flight risk. When re-arresting Petitioner on July 27, 2026, ICE

did not show him any warrant or even suggest to him that there was any suspicion that he had become a flight risk. LeRoy Decl. ¶¶ 7, 9. There was no basis whatsoever for Respondents to believe any circumstances had changed, as Petitioner had diligently complied with all U.S. laws, both immigration and otherwise, as well as the conditions of his 2022 parole. LeRoy Decl. ¶¶ 5, 9, 10, 11.

54. Petitioner's circumstances have not changed since CBP released him in 2022. LeRoy Decl. ¶¶ 9 - 11. Absent any basis for a finding that Petitioner, who had consistently satisfied all the conditions of his release for close to four years, had suddenly become a flight risk on July 27, 2026, respondents' warrantless re-arrest of Petitioner violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). *Id.*

55. Moreover, in cases of individuals previously released by DHS, noncitizens subject to the discretionary detention framework of 8 U.S.C. § 1226 have additional rights. Pursuant to section§ 1226(b), "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). A warrant of arrest may be issued only by those immigration officers listed in section 287.5(e)(2) of 8 CFR chapter I and may be served only by those immigration officers listed in § 287.5(e)(3) of 8 CFR chapter I. "[I]f an

immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance." *J.S.H.M. v. Wofford*, 2025 WL 2938808, at *4 (E.D. Cal. 2025). Similarly, "[w]hile the release decision was made by a DHS officer, not an immigration judge, the government's practice has been to require a showing of changed circumstances before re-arrest." *Id.*; *see also Saravia*, 280 F. Supp. 3d at 1197 ("According to government counsel, DHS has incorporated . . . into its practice, requiring a showing of changed circumstances both whether the prior bond determination was made by an immigration judge and whether the previous release decision was made by a DHS officer."); *see Ortega,* 415 F. Supp. 3d at 968 ("DHS re-arrests individuals only after a 'material' change in circumstances.") (citing *Saravia,* 280 F. Supp. 3d at 1197))*; Matter of Sugay,* 17 I. & N. Dec. 637, 640 (B.I.A. 1981).

56. It is thus well established that the specific permissible grounds for re-detaining an individual under the INA must include a "material change of circumstances." *Duong,* 2025 U.S. Dist. LEXIS 185024, at *22; *see also Qazi v. Albarran*, No. 2:25-cv-02791-TLN-SCR, 2025 WL 2769837, at *3 (E.D. Cal. Sept. 29, 2025) ("Petitioner was previously released pursuant to a finding that he was not at risk of fleeing or harming others, and as such, due process prevents him from being redetained except upon a showing of a material change in circumstances."); *Yan Lu v. Los Angeles Field Dir.*, No. 5:26-CV-575-JAK-SP,

2026 WL 1455317, at *3 (C.D. Cal. May 7, 2026); *Lesic v. LaRose*, No. 25-cv-2746-LL-BJW, 2025 WL 3158675, at *2 (S.D. Cal. Nov. 12, 2025); *Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025).

57. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, federal agents must be able to present evidence of a materially changed circumstance—namely, evidence that the noncitizen is in fact dangerous, has become a flight risk, or is subject to a final order of removal. Absent a material change in circumstances, the re-detention of noncitizens previously released by DHS pursuant to section 1226(a) violates the INA because it does not serve the purpose of the statute. Moreover, because Petitioner complied with the terms and conditions of his 2022 parole, "before Respondents may increase the conditions or amount of Petitioner's prior [conditions of release], Respondents must show a material change of circumstances that require the increased conditions or amount." *Yousef v. Mullin*, No. 8:26-cv-01280-AJR, 2026 U.S. Dist. LEXIS 120863, at *12 (C.D. Cal. June 1, 2026).

58. On July 27, 2026, Mr. Vera Cordova appeared for his scheduled ICE check-in at the Los Angeles ICE office, complying fully with his reporting obligation. Upon arrival, ICE apprehended and detained him without a warrant,

notice or cause. LeRoy Decl. ¶¶ 7, 9-12. Thus the ICE officers illegally re-arrested Petitioner. There was thus no reasonable suspicion, probable cause, or warrant to justify his arrest. *Id*.

59. ICE agents re-arrested Petitioner without notice, cause, or any procedural protections at all. LeRoy Decl. ¶¶ 7, 9-12. At the time of his re-arrest, there was no evidence of any "material change of circumstance" since Petitioner crossed the U.S. border and was paroled subject to alternatives to detention in 2022. Exh. A; LeRoy Decl. ¶¶ 5, 9, 10, 11. Nothing changed—except Respondents' plan to violate the constitutional and statutory rights of noncitizens—and even federal court orders—to achieve the current administration's mass deportation goals.

## FIRST CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution

### (Substantive Due Process—Detention)

60. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

61. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process]

Clause protects." *Zadvydas*, 533 U.S. at 690. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance during removal proceedings and preventing danger to the community. *See id.*

62. Petitioner was not a flight risk or a danger to the community when CBP first detained him in September 2022. Exh. A; LeRoy Decl. ¶ 5. Nothing has changed in the almost four years since then, and Petitioner is still not a flight risk or a danger to the community. LeRoy Decl. ¶¶ 10, 11. Respondents' detention of Petitioner is therefore unjustified and unlawful. Accordingly, Petitioner is being detained in violation of the Due Process Clause of the Fifth Amendment.

63. Moreover, Petitioner's detention is punitive as it bears no "reasonable relation" to any legitimate government purpose. Thus, the purpose of Petitioner's detention appears to be "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons"—namely, to meet DHS quotas. *See Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring).

## SECOND CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution

### (Procedural Due Process—Detention)

67. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

68. As part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding re-incarceration after his release. See *Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972); see also *Ortega*, 415 F. Supp. 3d at 969–70 (holding that a noncitizen has a protected liberty interest in remaining out of custody following release on bond).

69. Petitioner's re-detention was unlawful such that he should not be required to seek release on bond. All the controlling precedent from this Court, the Ninth Circuit, and the U.S. Supreme Court makes it abundantly clear that "the post-detention process Petitioner received and will receive is *no substitute* for the *pre-detention* process she was owed." *Hasratyan* 2026 WL 288909, at *4 (ordering petitioner's immediate release on similar salient facts and legal issues) (emphasis added); *see also Rosales v. Noem*, No. 5:26-cv-00112-JWH-MBK (C.D. Cal. Mar. 16, 2026) (discussing *Hasratyan* and granting preliminary injunction, Dkt. No. 23 at 11, ordering the immediate release of a previously paroled asylum seeker, and requiring that "any future enforcement actions after release must comply with Due Process requirements of at least a *pre-detention* hearing before a neutral adjudicator.") (emphasis added).

70. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hisnandez*, 872 F.3d at 990; *Zinermon*, 494 U.S. at 127 (generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.") (emphasis added). In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Martinez v. Clark,* 124 F.4th 775, 785, 786 (9th Cir. 2024).

71. Petitioner's arbitrary re-detention on July 27, 2026, without a pre-deprivation hearing, violated due process. After deciding to release Petitioner from custody in 2022, Respondents re-detained Petitioner almost four years later with no notice, no explanation of the justification for his re-detention, and no opportunity to contest his re-detention before a neutral adjudicator in advance. LeRoy Decl. ¶¶ 5, 7, 9-12.

72. Petitioner has a profound personal interest in his liberty. Because he received no procedural protections prior to his re-arrest on July 27, 2026, the risk of erroneous deprivation is high. The government has no legitimate interest in re-

detaining Petitioner without a material change of circumstances on or before the date of his re-arrest on July 27, 2026.

**THIRD CLAIM FOR RELIEF**

**Violation of the Fourth Amendment to the United States Constitution**

**(Unlawful Arrest)**

73. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

74. The Fourth Amendment protects the right of persons present in the United States to be free from unreasonable seizures by government officials.

75. As a corollary to that right, the Fourth Amendment prohibits government officials from conducting repeated arrests on the same probable cause. "It is axiomatic that seizures have purposes. When those purposes are spent, further seizure is unreasonable …. [T]he primary purpose of an arrest is to ensure the arrestee appears to answer charges…. Once the arrestee appears before the court, the purpose of the initial seizure has been accomplished. Further seizure requires a court order or new cause; the original probable cause determination is no justification." *Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020) (cleaned up); *see also United States v. Kordosky*, No. 88-CR-52-C, 1988 WL 238041, at *7 n.14 (W.D. Wis. Sept. 12, 1988) ("Absent some compelling justification, the

repeated seizure of a person on the same probable cause cannot, by any standard, be regarded as reasonable under the Fourth Amendment.”).

DHS agents released Petitioner from custody without bond on or around September 25, 2022. Exh. A; LeRoy Decl. ¶ 5. He had not engaged in any conduct in the intervening time – almost four years – that made him a flight risk or danger to the community. LeRoy Decl. ¶¶ 10, 11, 12. He had not engaged in any conduct between September 2022 and July 27, 2026, that made him a flight risk or danger to the community. *Id.* No material change in circumstances justified Petitioner's re-arrest on July 27, 2026. *Id.* Petitioner's re-arrest and detention by Respondents after he had complied with all immigration law and DGS requirements and absent any material change in circumstances thus constitute an unreasonable seizure in violation of the Fourth Amendment.

## <u>FOURTH CLAIM FOR RELIEF</u>

### Violation of the Administrative Procedure Act

79. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

80. The APA prohibits federal action that is “in excess of statutory jurisdiction, authority or limitations, or short of statutory right,” 5 U.S.C. §

706(2)(C), and "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *Id.* § 706(2)(A).

81. The government's quota-driven policy of re-arresting previously paroled asylum seekers with no changed circumstances based on their race and ethnicity is in excess of statutory authority in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C). The government has provided no reasoned or adequate explanation for this policy which represents a dramatic shift from recent and longstanding agency policy and practice. Such policy is arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A).

82. Respondents' policy of re-detaining individuals such as Petitioner without an individualized explanation for the basis of their parole revocation and pre-deprivation notice violated the APA. *See Y-Z-H-L*, 2025 WL 1898025, at *10-12 (holding that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision and finding that the absence of such description resulted in a violation of the APA). Such policy is arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A).

83. Petitioner's arbitrary re-arrest and re-detention without individualized suspicion, cause, notice or a pre-deprivation hearing before a neutral arbiter constitute final agency actions that violate the APA. *See* 5 U.S.C. § 706(2).

**<u>FIFTH CLAIM FOR RELIEF</u>**

**Violation of the Immigration and Nationality Act**

**(8 U.S.C. § 1226(a))**

84. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

85. Petitioner is subject to 8 U.S.C. § 1226(a).

86. Petitioner's re-arrest and re-detention on July 27, 2026, violated 8 U.S.C. § 1226(a) and its implementing regulations. A warrant of arrest may be issued only by those immigration officers listed in 8 C.F.R. § 287.5(e)(2) and may be served only by those immigration officers listed in 8 C.F.R. § 287.5(e)(3). No such warrant was issued to Petitioner.

87. In late 2022, DHS through its CBP agents made an individualized determination that Petitioner was neither a flight risk nor a danger to the community by releasing him from custody pursuant to 8 U.S.C. § 1226(a)(2)(B).

88. Thus, his re-detention on July 27, 2026 required an individualized determination of a material change in circumstances *on or before* July 27, 2026, going to flight risk or danger to the community for his re-detention to serve a legitimate regulatory purpose. *See Y-Z-H-L*, 2025 WL 1898025, at *10–12.

89. Petitioner's re-detention commencing on July 27, 2026, violated 8 U.S.C. § 1226(a) and its implementing regulations, given that he was not provided an

individualized pre-deprivation notice of the basis for his re-detention on July 27, 2026, nor a determination by a neutral arbiter of a material change in circumstances related to flight risk or danger to the community. LeRoy Decl. ¶¶ 5, 7, 10-12. Thus, there was and is no legal justification for his re-detention in violation of the INA Section 1226.

## SIXTH CLAIM FOR RELIEF

**Violation of the Immigration and Nationality Act**

**(8 U.S.C. § 1357(a)(2))**

90. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

91. Respondents violated Petitioner's rights under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) prohibiting warrantless arrests without reason to believe an individual is a flight risk.

92. When re-arresting Petitioner on July 27, 2026 when he appeared as required for his scheduled ICE check-in at the Los Angeles ICE office, complying fully with his reporting obligation. ICE did not show him any warrant or even suggest to him that there was suspicion that he had become a flight risk. LeRoy Decl. ¶12. Petitioner's re-arrest and re-detention by Respondents on July 27, 2026 without any reason to believe that he presented a flight risk and without a warrant

violated the INA and its implementing regulations, 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii).

**PRAYER FOR RELIEF**

Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;
2. Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody under the terms of his prior release and return to his all items and documents confiscated by ICE at or around the time of the commencement of his unlawful re-detention;
3. Enjoin Respondents from placing any monitoring devices, such as an ankle monitor, on Petitioner's person or other onerous parole conditions in violation of his constitutional rights that did not apply to his prior parole, without an individualized notice of the basis for such device or conditions and a hearing before a neutral arbiter at which Respondents must provide by clear and convincing evidence of a material change of circumstances regarding Petitioner's flight risk or danger which requires such monitoring and new parole conditions;
4. Declare that Petitioner's re-arrest and re-detention violated the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the

Administrative Procedure Act and the Immigration and Nationality Act, 8 U.S.C. § 1226, 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii);

5. Enjoin Respondents from transferring Petitioner outside this District or deporting Petitioner pending these proceedings;
6. Enjoin Respondents from re-arresting and re-detaining Petitioner in violation of his constitutional rights and the INA and specifically, without an individualized pre-deprivation notice of the basis for revoking his parole, and a hearing before a neutral arbiter at which Respondents must prove by clear and convincing evidence a material change of circumstances regarding Petitioner's flight risk or danger to others at the time of his re-arrest in accordance with 8 U.S.C. § 1226 and its implementing regulations;
7. Set aside Respondents' unlawful practices and policies pursuant to 5 U.S.C. § 706(2) as contrary to law, contrary to constitutional rights and in excess of statutory authority;
8. Award Petitioner his costs and reasonable attorneys' fees in this action pursuant to either (a) the Equal Access to Justice Act and 28 U.S.C. § 2412 or (b) the common law doctrine of bad faith; and
9. Grant such further relief as this Court deems just and proper.

,

Date: August 26, 2026.

Respectfully submitted,

/s/ *Carrie LeRoy*

Carrie LeRoy
Pro Bono Attorney for Petitioner

# VERIFICATION

I, Carrie LeRoy, declare as follows:

I am an attorney admitted to practice law in the State of California. Because many of the allegations of this Petition require legal knowledge not possessed by Petitioner, I am making this verification on his behalf.

I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof to be true to my knowledge, information, or belief.

I certify under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 26, 2026.

/s/ *Carrie LeRoy*
Carrie LeRoy
Pro Bono Attorney for Petitioner